UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL RALPH PAGE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No. EDCV 18-155 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action on January 23, 2018. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 13, 14.) On July 13, the parties filed a Joint Stipulation ("JS") that addressed the disputed issue. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.
# PROCEDURAL BACKGROUND

On April 22, 2014, Plaintiff filed an application for supplemental security income benefits and alleged an onset date of January 1, 2013. Administrative Record ("AR") 18. The application was denied initially and upon reconsideration. AR 18, 95, 119. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On January 5, 2017, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. AR 61-84. On June 7, 2017, the ALJ conducted a supplemental hearing at which Plaintiff, a medical expert and vocational expert testified. AR 34-58. On July 17, 2017, the ALJ issued a decision denying benefits. AR 15-27. On November 22, 2017, the Appeals Council denied review. AR 2-6. This action followed.

# II.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Plaintiff had the severe impairments of congestive heart failure, systolic, chronic; hypertension; mild to moderate degenerative joint disease of the bilateral knees; morbid obesity; mild chronic obstructive pulmonary disease; and history of gout. AR 20.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work. He could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; and occasionally perform postural activities such as climbing, balancing, stooping, kneeling, crouching and crawling. He is precluded from excessive heat and cold; hazardous machinery; and unprotected heights including ladders, ropes and scaffolds. AR 21.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

1    Plaintiff did not have any past relevant work but there were jobs that existed in
significant numbers in the national economy that he could perform such as cashier II,
small products assembler and toy assembler. AR 25-27. The vocational expert
explained that these types of jobs can be performed either seated or with a sit/stand
option. AR 53. The vocational expert testified that if Plaintiff is deemed limited to
sedentary work, he could perform the representative jobs of charge account clerk, final
assembler and sorter of small agricultural products such as nuts. AR 53-54.

### C. Treating Physician

Plaintiff argues that the ALJ improperly rejected the opinion of his treating cardiologist, Dr. Sethi.

An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d at 632 (citations omitted and internal quotations omitted).

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Id.* at 632. When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation and

4

emphasis omitted). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Dr. Sethi completed two residual functional capacity questionnaires on May 14, 2014 (AR 611-13) and November 22, 2016 (AR 721-22). In 2014, Dr. Sethi opined that Plaintiff's congestive heart failure would seldom interfere with the attention and concentration required to perform simple tasks, and he had only occasional nausea and dizziness from medication. He could occasionally lift 20 pounds and frequently lift 10 pounds during an eight-hour workday. He could sit for 45 minutes and stand/walk for 20 minutes at one time, and could sit for five hours and stand/walk for three hours in an eight-hour workday. He would need three unscheduled, 20-minute breaks during an eight-hour workday. He would be absent once or twice per month. AR 611-12. Dr. Sethi opined that Plaintiff was not physically capable of working eight hours per day, five days per week on a sustained basis. AR 612.

In 2016, Dr. Sethi opined that Plaintiff's chronic left ventricular systolic dysfunction would seldom interfere with the attention and concentration necessary to perform simple tasks. He could occasionally lift 20 pounds and frequently lift 10 pounds in an eight-hour workday. He could sit for two hours and stand/walk for one hour in an eight-hour workday, and would need a 15-minute break every two hours. AR 721. He would likely be absent once or twice per month. AR 722.

The ALJ discounted Dr. Sethi's opinions to the extent he indicated more restrictive limitations than the RFC because the "above-discussed evidence of record" did not support those opinions. AR 24. Citing to Dr. Sethi's records, the ALJ noted that the objective examination findings "were normal throughout the majority of the record" with flare-ups in July 2014, August 2015 and January, April and November 2016. AR

23. The ALJ also relied on the opinions of the examining physician and medical expert. AR 24-25.

Dr. Sethi's records indicate that, on May 14, 2014, Plaintiff was able to walk one block without stopping and was able to complete activities of daily living without dyspnea (shortness of breath). He tried working in the backyard with a shovel but had to stop after 15 minutes due to fatigue and dyspnea. AR 590, 604. In June 2014, Dr. Sethi noted that Plaintiff is in functional class II for his chronic left ventricular systolic dysfunction.[2] AR 591. A report to Dr. Sethi in June 2014 indicated past echocardiograms showing an ejection fraction of less 20% in February and around 20% in April 2014. His symptoms included shortness of breath when walking about half a mile, gardening or shoveling dirt. Plaintiff reduced his heavy alcohol use from up to 18 beers per day to 2-3 beers every other day. Plaintiff, who had been smoker for 30 years, reduced his smoking to two cigarettes per day. AR 569-70.

In July 2014, Dr. Sethi noted that Plaintiff has been stable with no new symptoms. He performed activities of daily living without limitations. He was able to walk quite a distance without significant dyspnea but resumed smoking 3-4 cigarettes per day. AR 592, 602. His heart rate and rhythm were normal with no gallop and no edema. He was scheduled for AICD (automatic implantable cardioverter-defibrillator) placement next week. AR 593, 602. In August 2014, Plaintiff had the AICD placed without complications. His heart condition remained stable but he continued to smoke. He was well developed, well nourished and in no acute distress. AR 595. His heart rate and rhythm were normal with no gallop, no murmurs and no edema. AR 594. In October 2014, Plaintiff's heart condition remained stable with no new symptoms, and he

---

[2] The New York Heart Association system ("NYHA") divides heart patients into four categories based on limitations during physical activity. "Class II represents 'slight limitation of physical activity,'" meaning that "the patient is '[c]omfortable at rest, but ordinary physical activity results in fatigue, palpitation, or dyspnea.'" *Rizzitello v. Colvin*, 2015 U.S. Dist. LEXIS 122328, *14 n.4 (C.D. Cal. Sept. 11, 2015).

continued to smoke. His heart rate and rhythm were normal with no gallop, murmurs or edema. AR 596-97.

In November 2014, Dr. Sethi's records indicate Plaintiff was stable, had "no limitation in ordinary activities" and smoked 2 cigarettes per day. AR 653. He had regular heart rate and rhythm with no gallop, no murmurs and no edema. AR 654. In May 2015, Dr. Sethi noted Plaintiff had gained weight due to his diet, and continued to smoke. His heart rate and rhythm were normal, and he had no gallop, murmur or edema. AR 655-56. In August 2015, Dr. Sethi reported that Plaintiff was doing well and could perform ordinary activities without limitation. He continued to smoke 8 cigarettes per day. His heart rate and rhythem were normal and he had no gallop or murmur. He had pitting edema but not bilateral. He was now in NYHA functional class I-II.[3] AR 657. In January 2016, Plaintiff reported quitting smoking one week ago. He was able to walk two blocks. AR 659. Wheezing was heard in his lungs. He had normal heart rate and rhythm but no gallop or murmur. He had pitting edema but not bilateral. Dr. Sethi opined that Plaintiff was at intermediate surgical risk mainly for heart failure decompensation. AR 660.

In November 2016, Plaintiff reported doing well overall. He was able to conduct activities of daily living without dyspnea but had not resumed normal activity due to wound healing. Wheezing was heard in his lungs.[4] His heart rate and rhythm were normal without gallop or murmur. He had pitting edema but not bilateral. AR 792-93. In February 2017, Plaintiff reported he had helped his family move and had lower back discomfort. He had normal heart rate and rhythm with no gallop or murmur. He had pitting edema but not bilateral. AR 794-95. Device checks on his AICD in 2014-2016

---

[3] NYHA class I symptoms means "[o]rdinary physical activity does not cause undue fatigue, palpitation, dyspnea (shortness of breath)." *Harvey-Mitchell v. Berryhill*, 2017 U.S. Dist. LEXIS 136321, *19-*20 (W.D. Wash. Aug. 24, 2017).

[4] His wheezing was noted to be mild in this period with dry cough and rhonchi present. AR 788-89.

indicated that Plaintiff had received no ICD shocks.  AR 615, 617, 620, 622, 624, 626, 629, 631, 634, 636, 638, 640, 643, 645, 647, 649.

The ALJ gave some weight to the opinion of the medical expert, who was board certified in internal medicine and cardiology.  AR 24, 38.  The medical expert testified that he reviewed all of Plaintiff's medical records in the file and evaluated Plaintiff's heart condition as well as other conditions.  AR 39.  The medical expert opined that Plaintiff could lift 20 pounds occasionally[5] and 10 pounds frequently.  He could stand/walk two hours and sit six hours in an eight-hour workday.  He could occasionally climb stairs, bend, stoop, crawl, crouch and kneel.  He should avoid extreme heat or cold, ladders, scaffolds and ropes.  AR 41.  The medical expert agreed that Plaintiff's ejection fraction was low but explained that Plaintiff did not meet a listing because he was in NYHA functional class I-II, which is "pretty good actually."  AR 43-44.  A person in NYHA functional class I-II "can do normal activities every day."  AR 45.  In response to the ALJ's question, the medical expert testified Plaintiff should not need unscheduled breaks throughout the day even though he has a body mass index (BMI) up to 40 and an ejection fraction below 30%.  AR 46.

The ALJ also relied upon the opinions of the examining physician, Dr. Joseph, who performed an internal medicine evaluation in June 2014.  AR 25, 454-59.  Plaintiff advised that his echocardiogram in February 2014 showed less than 20% ejection fraction.  AR 454.  His physical examination was within normal limits.  AR 456-58.  An electrocardiogram revealed a sinus rhythm T-wave abnormality in V4 and V5.  Dr. Joseph opined that Plaintiff was capable of light work, sitting six hours in an eight-hour workday and standing/walking for six hours with 10-minute breaks every two hours.  AR 458.

---

[5] Plaintiff testified that 20 pounds sounded about right.  AR 51.  The medical records indicate Plaintiff has exerted himself to a significant degree.  Plaintiff complained that he hurt his back while pushing a stalled car.  AR 687.  On November 11, 2016, Plaintiff reported back pain after moving boxes in his garage.  AR 707.

The ALJ could rely on the opinions of the examining physician and medical expert in formulating the residual functional capacity assessment and discounting the opinion of Dr. Sethi as unsupported by his own medical records, which did not indicate disabling symptoms.[6]  *See Hugues v. Berryhill*, 2018 U.S. Dist. LEXIS 110401, *15, *23-*24 (C.D. Cal. July 2, 2018) (finding ALJ could discount treating physician's opinion regarding claimant who had ejection fraction of 20% with non-disabling symptoms).

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: August 3, 2018

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[6] *Compare Moody v. Berryhill*, 2017 U.S./ Dist. LEXIS 170469, *10-*11 (D. Or. Oct. 11, 2017) (noting low ejection fraction, a record of discharges from an external defibrillator (Lifevest), and episodes of loss of consciousness and hospitalizations); *Perez v. Colvin*, 2016 U.S. Dist. LEXIS 44230, *12 (C.D. Cal. Mar. 31, 2016) (noting low ejection fraction, heart murmur, shortness of breath with exertion and hospitalization due to chest pains and shortness of breath).